

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom C. King
State Auditor and Efficiency Expert
Austin, Texas

Dear Sir:

Opinion No. 0-1842
Re: S. B. No. 139 — Appropriation
Bill 45th Legislature --
State Teachers' Colleges --
Per diem and expenses of
Board members -- Institution-
al funds -- Maintenance ap-
propriation -- R. C. S., Art.
2647 -- R. C. S., Art. 2654d.

We have your letter of January 11, 1940, requesting
an opinion from this department upon the questions herein-
after set forth, and take occasion to thank you for the very
helpful way in which you have stated the questions in con-
nection with a citation to the statutes pertinent to the
respective inquiries.

Your letter in full is as follows:

"Article 2647, Revised Civil Statutes, relat-
ing to the Board of Regents of the State Teachers'
Colleges, provides in paragraph 6 in part as fol-
lows:

". . . Each and every member of
said board shall receive five dollars
per day for the time spent attending
the meetings provided for in this law,
and in addition thereto the amount of
their traveling expenses, said compen-
sation to be paid to the several mem-
bers of the board out of the appropria-
tion for the support and maintenance
of the said State Teachers' Colleges
as the board may direct.'

Honorable Tom C. King - page 2

"Section 2 (a) of Chapter 444, Acts 45th Legislature, appropriated to each of the State Teachers' Colleges the balances in their institutional funds from the preceding biennium, together with the income to such funds during the biennium for which the appropriation was made, for their 'support, maintenance, operation, and improvement.' In the same enactment appropriations were made from Treasury funds for items denominated variously as follows (quoted, and numbered separately for the different schools): (1) Maintenance and equipment; (2) Maintenance and Equipment; (3) General maintenance, equipment and replacements; (4) Maintenance and equipment, including heat, light, power, plumbing, wiring, stationery, printing, Regents' Expenses, etc.; (5) Departmental Maintenance and Equipment; (6) Departmental maintenance and equipment; (7) Maintenance and Equipment.

"Your opinion is respectfully requested as follows:

"(1) Was authority granted the Board to require contributions from each institution to pay the Regents' per diem and expense allowances

"(a)  from local institutional funds; and/or
"(b)  from State Treasury funds?

"(2) Did the Board have authority to retain an executive secretary, paying him a monthly salary and traveling expenses from funds acquired in the manner indicated in question (1) above?

"(3) Was authority given to employ a stenographer for the chairman of the Board, at a monthly salary from funds realized in the same manner?

"(4) Could funds available to the Board under these appropriations be used to pay such of its incidental expenses as the cost of floral offerings?

"Paragraph 7 of Article 2647 provides in part:

". . . said board shall have power to formulate and establish such rules

Honorable Tom C. King - page 3

> for the general control and management
> of the State normal schools for white
> teachers, for the auditing and approv-
> ing of accounts, and for the issuance
> of vouchers and warrants as in their
> opinion may be necessary for the effi-
> cient administration of such schools.'

"(5)   Is this or any other law sufficient to
empower the Board to maintain a bank account in
its name as a repository for contributions re-
ceived from the different colleges under its jur-
isdiction, disbursements from which are made by
checks drawn by the Board's executive secretary?"

We beg to answer your questions categorically
as follows:

1.   Yes.   These items were expressly directed" to
be paid to the several members of the Board out of the ap-
propriation for the support and maintenance of the said
Teachers' Colleges as the Board may direct."   The balances,
and the incoming institutional funds were appropriated to
each of the State Teachers' Colleges, and so the general
itemized bill appropriated a sum to each of such colleges,
in both instances for the purpose of the "maintenance", etc.
of the institution.

These items were therefore properly payable from
either the local institutional funds or the State Treasury
funds.

2.   Yes.   The Board had the authority, if neces-
sary, to employ an executive secretary and to pay his sal-
ary and traveling expenses from either of the funds above
mentioned.

3.   Yes.   A stenographer, if necessary, could
lawfully have been employed by the Board and paid in like
manner as an executive secretary.

4.   No.   To "say it with flowers" is a worthy
sentiment, but is a personal privilege.   It has never been
made an official duty of a public officer or board in this
State.

In answering these questions we have, of course,
done so in the light of the latter part of paragraph "7"
of Article 2647 quoted in your letter of inquiry.

5. Sec. 2 of Article 2654d Vernon's Texas Civil Statutes, is pertinent to this inquiry. That section is as follows:

"The governing boards of the respective institutions named in Section One above are authorized to select depository banks as places of deposit of all funds of the kind and character named in Section One, which are collected by said institutions, and said boards shall require adequate surety bonds or securities to be posted to secure said deposits, and may require additional security at any time any of said boards deem any said deposit inadequately secured. All funds of the character named in Section One hereof, which are so collected shall be deposited in said depository bank or banks within five days from the date of collection. Depository banks so selected are hereby authorized to pledge their securities to protect such funds. All depositories so designated shall pay interest on said deposits at a rate to be agreed upon by said depositories and said governing boards. Any surety board furnished under the provisions of this Act shall be payable to the Governor of the State and his successors in office, and venue of suit to recover any amount claimed by the State to be due on any of said bonds is hereby fixed in Travis County, Texas.

State Teachers' Colleges and the character of funds under consideration appear to be embraced within Sec. 1 of this Article, and, therefore, to fall within the scope of Sec. 2.

Subsection (4) of the general provisions subjoined to S. B. No. 139, the general appropriation for support and maintenance of State institutions of higher learning, (General Laws 45th Legislature, 1937, regular session, at p. 1044) declares:

"The governing board of the respective institutions for which appropriations are made in this Act are hereby authorized to select depository banks for the safekeeping of local funds collected by said institutions, etc."

There appears to be no constitutional inhibition of such special depositories. Sec. 23 of Article 4 of the Constitution requires the Comptroller of Public Accounts, the Treasurer, the Commissioner of the General Land Office and the Secretary of State to pay any and all fees received by them in their official capacity when received into the State treasury.

Section 24 of the same Article requires the officers of the Executive Department and all officers and managers of State institutions to keep an account of all moneys received and disbursed or otherwise disposed of by them, and to make certain reports to the Governor respecting such things.

The matter of depositories for public funds appears to be left to the Legislature.

Moreover, the matter of banking the contributions of the various Teachers Colleges to the Board of Regents is not specifically provided for. Where such contributions — pro rata payments to per diem and expense — have actually come into the hands of the Board they may be handled and disbursed in accordance with ordinary banking methods.

Of course, what we have said is not meant to authorize the withdrawal from the State Treasury of funds in anticipation of permitted expenses to the Board by any college.

So that, we answer your fifth question in the affirmative.

Our answers herein given are not because of any isolated, compelling provision or language of the statute, but rather we are constrained by the pertinent statutes and parts as a whole, indicating the harmony of purpose and means of the Legislature -- its intentions -- which is at last the law.

Article 2647, subdivision 1, gives to the Board of Regents general control and management of all State Teachers Colleges for whites, authorizing it specially to employ and discharge presidents and principals, teachers, treasurers and other employees, and to fix the salaries of the persons so employed.

Subsection 3, General Provisions of the Appropriation Act, provides:

"No property belonging to any of the institutions herein provided for, or any agency thereof, shall be sold or disposed of without the consent of its governing board, and all proceeds from the sale of such property, from labor performed, from the sale of materials, crops and supplies, from fees and any and all other receipts shall become and are hereby appropriated as maintenance or contingent fund to be expended under the direction and with the approval of the governing board having jurisdiction. Said governing boards are authorized to use out of the proceeds of said receipts and funds, in accordance with the provisions of this Act, such amounts as they shall deem necessary for the support, maintenance, operation and improvements of said institutions. Any balances remaining to the credit of any of said institutional local funds at said institutions or in the State Treasury at the end of any fiscal year are hereby re-appropriated for the above mentioned purposes for the succeeding year."

We have given the statutes a reasonable and liberal interpretation to accomplish their ends.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

APPROVED FEB 12, 1940

ATTORNEY GENERAL OF TEXAS